# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-09V
### UNPUBLISHED

| | |
|---|---|
| JOHN BLACK,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: May 22, 2023<br><br>Special Processing Unit (SPU);<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA); Six Month<br>Severity Requirement |

*Sean Franks Greenwood*, The Greenwood Law Firm, Houston, TX, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION DISMISSING CASE**[1]

On January 4, 2021, John Black ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 31, 2019. Petition at 1-2.

On July 27, 2022, Respondent filed a Motion to Dismiss, contending that Petitioner does not meet the Table requirements for a SIRVA, and could not meet the Vaccine Act's "severity" requirement. Petitioner opposes the motion (ECF No. 38 ("Opp.")), and Respondent filed a reply on September 28, 2022. ECF No. 40.

---

[1] In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access..

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find Respondent's motion meritorious, and therefore dismiss the claim.

## I. Procedural History

Respondent filed his Rule 4(c) Report in July 2022, arguing that compensation is not appropriate in this case, because Petitioner could not establish that he meets the Table requirements of a SIRVA or that he suffered the residual effects of his injury for more than six months. Respondent's Rule 4(c) Report ("Report"), ECF No. 35, at 7-10. Accordingly, a motion to dismiss accompanied the Rule 4(c) Report. ECF No. 36. As noted above, Petitioner opposes dismissal. Respondent filed a reply on September 28, 2022. Respondent's Reply in Support of Motion to Dismiss ("Reply"), ECF No. 40. Petitioner thereafter filed a motion for leave to file a Sur-Reply on October 6, 2022. ECF No. 42.

## II. Factual Background

Petitioner received a flu vaccine in his left shoulder on October 31, 2019. Ex. 8 at 3. Petitioner's prior medical history includes a hospital stay in March of 2019 related to injuries sustained from a propane dryer explosion (ex. 7 at 40-42), mitral valve repair, and reconstructive ankle surgery in 2009. Ex. 9 at 7-8.

On December 16, 2019 (approximately six weeks from vaccination), Petitioner presented to Charles Whittenburg, D.O., with complaints of left shoulder pain. Ex. 2 at 9. Petitioner reported that the pain "occurred after he received his flu shot" on October 30, 2019. *Id.* X-rays showed small spurs at the distal clavicle but was otherwise within normal limits. *Id.* at 8. Petitioner was assessed with rotator cuff inflammation or subacromial bursitis and a steroid injection was administered. *Id.* at 9.

Petitioner thereafter contacted Dr. Whittenburg again on December 30, 2019, and reported continued shoulder pain. Ex. 9 at 19. Petitioner also indicated that he wanted to schedule an MRI, and that the "injection did not work from last visit." *Id.*

The proposed MRI occurred on January 29, 2020. Ex. 9 at 16. The MRI showed mild edema within the posterior humeral head representing a contusion from direct trauma or a recent shoulder dislocation, moderate acromioclavicular osteoarthritis, but no full-thickness rotator cuff tear, evidence of tendinosis, or signs of bursitis. *Id.* at 17.

That same day, Petitioner saw Dr. Whittenburg for left wrist pain following a fall on January 21, 2020. Ex. 9 at 12. The MRI results were also discussed, and Dr. Whittenburg stated the MRI revealed "some spurs as well as degenerative joint disease in the

acromioclavicular joint, but otherwise negative for anything significant other than a lesion." *Id.* at 11-12. The record further states that Petitioner is concerned that his condition is "Cerva" [sic], that "[t]his all came from an injection he received", and that he "has been speaking to a group of attornies [sic] concerning this, who agree with him on his diagnosis of Cerva." *Id.* at 12. Dr. Whittenburg advised Petitioner that his condition could go away and advised him to follow-up should any new symptoms arise. *Id.* No additional medication, testing, or therapy was recommended.

On March 6, 2020, Petitioner saw his urologist for an unrelated condition. Ex. 4 at 2-4. No comment was made about shoulder pain at this time – and there are no records of additional treater visits specific to shoulder pain in February, March, or April 2020.

Thereafter, there was a significant treatment gap. Petitioner next sought care *over eighteen months* later on July 7, 2021.[3] At that time, Petitioner saw Dr. Whittenburg with continued complaints of left shoulder pain. Ex. 9 at 13-14. Petitioner reported pain that prevented him from sleeping on his side and difficulty lifting anything heavier than a gallon of milk. *Id.* at 14. Upon examination, he exhibited difficulty with abduction above 90 degrees. *Id.* He was assessed with impingement syndrome of the left shoulder and received a steroid injection.

On July 22, 2021, Petitioner contacted Dr. Whittenburg's office indicating that he was still experiencing shoulder pain. Ex. 9 at 20. Petitioner stated that he "wanted a telephone documentation stating that he does not feel this injection worked." The record also notes that a second opinion was needed, and that Petitioner "feels this is most probably related to SIRVA and has already obtained lawyers regrading this." *Id.* A referral was sent to Dr. Sandoval for a second opinion. *Id.*

No further medical records were provided.

Petitioner has submitted two affidavits in support of his petition. Ex. 1, 10. The first states that he received a flu vaccine on October 31, 2019, which "stung more than any prior flu shot". Ex. 1 at 1. The pain increased over the next several days, and "around December 10, 2019" he called his primary care physician regarding his shoulder. *Id.* at 1-2. Further, Petitioner explained that in February of 2020 he grew increasing wary due to Covid restrictions and began home physical therapy. *Id.* at 3.

---

[3] Respondent highlights the fact that this visit occurred after a status conference held on June 24, 2021, during which the claim's inability to satisfy the six-month severity requirement was reported. Report at 5 n.1.

3

Petitioner also has offered a supplemental statement (Ex. 10) to "clarify certain misstatements my attorney made in the Response to Motion to Dismiss." Ex. 10 at 1. Petitioner stated that he currently resides in Stigler, Oklahoma, but received the vaccine in Howe, Texas. *Id.* Further, Petitioner explained that he did not follow up after the January 2020 appointment with Dr. Whittenburg "because of the pandemic", and not due to any heart issues. *Id.* at 2. However, "[b]y July 2021, I received the COVID vaccine and traveled to Dr. Whittenburg to follow up on my continued shoulder pain." *Id.* at 2.

Austin Black, Petitioner's son, also submitted an affidavit in this case. ECF No. 37. Mr. Black states that Petitioner first complained of shoulder pain the day after he got vaccinated. *Id.*

### III.     Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that he suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, he or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged

signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[4] With regard to severity, a petitioner must show that he suffered the residual effects or complications of his injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.,* 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

## IV. Analysis

### 1. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of his Vaccination

The medical records establish onset of Petitioner's injury close-in-time to vaccination. Petitioner first sought treatment approximately six weeks after his October 31, 2019 vaccination. In the subsequent timeframe, he consistently reported to treaters

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

that he had experienced symptoms since the vaccination. Ex. 2 at 9 (December 16, 2019 record stating that his pain occurred after a flu shot); Ex. 9 at 11-12 (record from January 21, 2020 stating his condition "came from an injection he received"). These statements, while temporally vague, are not *inconsistent* with a proper Table onset.

Further, the records show that Petitioner reported shoulder pain "since" the vaccination in a relatively timely manner (*i.e.* approximately six weeks after vaccination). It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and may not inform treaters of all specific facts relevant to its onset until later. Here, the added detail of onset did not "wait" for months before being provided, but began to be reported in a reasonable time post-vaccination.

Accordingly, and based upon the above, I find there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain was more likely than not within 48-hours of vaccination.

### 2. Petitioner Does Not Meet the Severity Requirement

The "severity requirement" must also be satisfied. Because Petitioner received his vaccine on October 31, 2019, and alleges pain that same day, severity must be established at least through May 1, 2020 (six months after onset). This record, however, establishes pain only through *January 29, 2020*. Ex. 9 at 16. Thereafter it is silent for approximately eighteen months until July 7, 2021. *Id.* at 13-14.

Petitioner argues that severity is established, explaining that the gap in treatment was due to the COVID pandemic. Ex. 1 at 3, Ex. 10 at 2.[5] But although in many cases I have granted that the intervention of the Pandemic can reasonably be understood to have caused individuals to put off treatment, especially in the spring of 2020, the gap in this case is too large to be excused for this reason – especially since Petitioner's cessation of treatment began in late-January 2020, and thus somewhat before the real initial impact of the Pandemic began.

---

[5] Petitioner's counsel argued in his Opposition that Petitioner was unable to seek care for a period of time due to the inability to utilize telehealth visits, Petitioner's high-risk status for contracting COVID, and the remote location of Petitioner's residence. Petitioner's supplemental declaration clarified that this was incorrect, stating "[m]y attorney misunderstood that I missed appointments because of my open-heart surgery or heart condition. It was because of the pandemic." Ex. 10 at 2.

Petitioner also states that he began at-home physical therapy around February 2020. Ex. 1 at 3. But it is unclear what Petitioner's physical therapy entailed, or if it even occurred, as there is no corroborating evidence of his ever going to physical therapy or being instructed to undergo it himself.

Petitioner relies on the July 7, 2021 visit to Dr. Whittenburg to meet the severity requirement. Ex. 9 at 13-14. As Respondent notes, however, Petitioner sought this medical care not only after the claim's initiation, but only after the severity requirement was raised during the course of this litigation. Report at 9; see also June 28, 2021 Scheduling Order (ECF No. 16) (noting that the parties discussed whether Petitioner could establish he met the severity requirement). Further, Petitioner received a referral for a second opinion on July 22, 2021, but there are no records that indicate he continued to follow up. Ex. 9 at 20. Thus, Petitioner's subsequent treatment visit deserves somewhat less probative weight, since it occurred in part with an eye toward supporting the claim- and therefore is not worthy of the same weight as contemporaneous proof that Petitioner had been seeking treatment closer-in-time to the vaccination.

I recognize that Petitioner has *alleged* his pain persisted beyond six weeks of vaccination. But a special master cannot make a finding based upon "the claims of a petitioner alone, unsubstantiated by medical records or medical opinion." 42 U.S.C. § 300aa–13(a)(1). As one special master observed, "[i]f petitioners could establish that they suffered from a medical problem simply by testifying that they suffered from a medical problem, then the Vaccine Act's requirement would become almost meaningless." *Smith v. HHS*, No. 19-412V, 2021 WL 615217, at *7 (Fed. Cl. Spec. Mstr. Jan. 22, 2021) (finding that petitioner's testimony alone could not carry her burden of proving the six-month severity requirement).

Given the above, I cannot conclude that the record preponderantly establishes Petitioner's injury persisted for the six months required by the Act. Such a lengthy treatment gap is too large to ignore in this case given the facts, and allows for the possibility of other intervening factors as more likely explanatory of Petitioner's subsequent shoulder complaints than his fall 2019 injury.

## Conclusion

The evidentiary record does not support Petitioner's contention that he experienced the residual effects or complications of his injury for more than six months after onset. Because Petitioner has failed to meet the severity requirement set forth in § 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS** his claim in its entirety. In the absence of a timely-filed motion for review (see Appendix

B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[6]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.